# N. Y. SUPERIOR COURT.

## ROSWELL D. HATCH Exc. &c. agt. JOHN B. FOGERTY, and others.

It is fundamental in respect to the duty of an *attorney* towards his client that he should not use any information which he has derived from his client to the prejudice or injury of his client; and especially that he shall not act in opposition to his client's interests.

The rule is that, lest any temptation should exist to violate professional confidence, or to make any improper use of information which an attorney has acquired confidentially, as well as upon principles of public policy, he will not be permitted to be concerned on one side of proceedings in which he was originally in a different interest.

Where the attorney was employed by his client to institute and conduct proceedings to extinguish the rights and interests of a builder under a contract to purchase lots and build houses thereon, made with the client, and the mode adopted by the attorney to extinguish such rights and interests was by a public sale of the property, after notice, in pursuance of the provisions of the contract:

*Held*, that it is very questionable whether such a sale, although authorized by the contract, was, or could be made, effectual to foreclose the contractor's interests.

The provision in the contract was that if the builder refused or neglected to complete the houses, or to diligently prosecute the work; or if he suspended the work for ten days, the owner might demand payment of his advances, and upon refusal to pay, might sell at public or private sale all of the builder's interest in the premises.

Although it appeared that the contractor consented to the application to foreclose, by the attorney, for the purpose of extinguishing the claims of certain creditors and lien-holders, yet the whole evidence showed very clearly that the intention of the owner was to rescind the contract and put an end to all claims and rights of the contractor under it.

Subsequently, as the facts disclose, the contractor was indebted to the attorney in a considerable sum for professional services; that he took from the contractor a transfer of two thirds of his claim against the owner—who had been in posesssion of the premises for several years, in satisfaction of such indebtedness.

The attorney then caused an action to be brought in the name of the contractor against the owner, which must have been brought for the purpose of harrassing the owner or vexing him info a settlement, which proved to be the result, to the amount of over $3,000, which the owner was compelled to pay to secure his title under the foreclosure; that the attorney was interested to the extent of two thirds in the result of the suit; that the foreclosure of that action was the insufficient title the owner had acquired under the foreclosure proceedings, which the attorney had himself conducted for the owner:

Hatch agt. Fogerty.

*Held*, in an action by the executor of the owner against the attorney to recover the sum the attorney had received in the action, in the name of the contractor against the owner, on the ground that it was received in violation of the duty of the attorney towards his client, that there was no foundation upon which a defense by the attorney could be raised.

A party who has advised or assisted in perpetrating a wrong cannot afterwards be allowed to use the knowledge he has acquired to secure a pecuniary benefit to himself, by an attack upon the proceedings he had advised and conducted to consummate the wrong.

*Before* MONELL, JONES *and* SPENCER, J.J.

APPEAL from a judgment, heard at the January general term, 1871.

In August, 1851, Hogan, the plaintiff's testator, contracted to sell to one Willock, certain lots in this city, and agreed to make advances of money to assist Willock in building; and when the buildings were inclosed, Hogan was to convey the lots to Willock, and Willock was to execute a mortgage to Hogan for the purchase money and advances. The contract contains the following provisions:

"It is furthermore agreed and understood, that if the said Willock refuse or neglect to complete the said intended houses, or if the diligent prosecution of the work thereon shall, at any time after the date of these presents, be suspened for ten days, then and in such case, said Hogan shall have the right to insist on an immediate re-payment of all the advances he shall have made, together with interest thereon; and he also is hereby authorized in such case to sell at public or private sale all the right title, interest and estate of the said Willock in and to the said premises, and to apply the proceeds of such sale to the payment and satisfaction of the expenses of such sale, and of all claims and demands due, or thereafter to become due, which the said Hogan may have against the said Willock, for, or upon account of, the premises, and if any surplus should remain, the same is to be paid to the said Willock. The said Hogan is, however, to give the said party one week's notice of his intention to make such sale."

Willock took possession of the lots, and began building.

Subsequently, and in December, 1852, Hogan having claimed that Willock had broken the contract, employed as was alleged, the defendant, Fogerty, who is an attorney at law, as his attorney to acquire, or extinguish, Willock's interest in the lots under the provision contained in the contract. For this service, Fogerty, as was also alleged, was paid by Hogan.

Fogerty proceeded to foreclose the contract by a public sale pursuant to notice to Willock, at the Merchant's Exchange, of all Willock's right, title and interest in the lots held by him, under the contract. Hogan became the purchaser at the sale, and entered into, and has continued in, possession, claiming title under such purchase.

There was other employment of Fogerty by Hogan, in controversies connected with the lots, such as evicting a person in possession of one of the lots ; resisting the claims of judgment creditors of Willock, and of mechanics having liens for work or material. And especially, Fogerty was employed by Hogan, as was also alleged, to procure for Hogan from Willock a full release of all claims of Willock against Hogan under the contract.

Such a release was procured by Fogerty, but for purposes as alleged by Fogerty, as hereafter stated, and for his services under these various employments including, as was alleged, his employment to procure the release, he was paid by Hogan.

It was alleged by Fogerty, and was found as a fact by the court, in regard to the release that Fogerty was employed by Hogan with the concurrence and assent of Willock to take such proceedings as would be necessary to extinguish the claims of the creditors and lien holders of Willock against the property, and for that purpose only, and not otherwise, he did procure the release from Willock, and that it was procured upon the express condition that the same should not at any time, be delivered to Hogan, and that it should

not in any manner affect the claim or interest of Willock to the premises, or against Hogan upon the contract.

Hogan continued in the undisputed possession of the premises, under this purchase, from December 1852, until some time in June, 1859, a period of nearly seven years, when an action was commenced against Hogan, or in the name of Willock by Ga Nun, Jordan and Bain, his attorneys; in which action Willock demanded a deed from Hogan of the premises pursuant to the terms of the contract, and an accounting by Hogan of the rents or profits of the premises during the nearly seven years he had held possession.

The ground upon which that action was founded, was, that the sale at the Merchant's Exchange, which had been conducted by Fogerty, has not extinguished Willock's interest in the premises, or his rights under the contract.

Hogan appeared in that action by John H. Hedley, his attorney, and set up in his answer, as a defense, the foreclosure sale which had been conducted by Fogerty, and also the release which it was claimed that Fogerty had procured from Willock to Hogan of all his (Willock's) interest in the premises, and of all claim against Hogan under the contract, and which sale and release he claimed was a bar to Willock's action.

Pending that action as before, there had been a trial of the issues, Hogan died, and the action was afterwards continued in the name of his executor, and was sent to a referee, to be by him heard and determined.

On the trial of that action, Fogerty was examined as a witness for and in behalf of Hogan, and amongst other things testified to the purpose, as found by the court, in respect to the release from Hogan, namely—that it was procured for the purpose of defeating the claims of judgment and lien creditors of Willock to the premises, and for no other purpose, and was not intended to be delivered to Hogan, or in any manner to affect the rights of Willock to the premises, or his interests under the contract.

Fogerty upon that examination made no disclosure of any interest in himself in that action, and it was not then known to the plaintiff in this suit, that Fogerty at that time, and even before the commencement of that action had a large interest in the result of the action.

In ignorance of any such interest, and influenced by the testimony Fogerty had given of the purchase of the release, the plaintiff in May, 1862, compromised, and settled that suit, paying to Ga Nun, Jordan and Bain, the attorneys, the sum of three thousand dollars in satisfaction of the claim.

After such settlement had been effected, Fogerty commenced an action in his own name as plaintiff against Ga Nun, Jordan and Bain, in which he alleged, that he had retained and employed them to prosecute the action of Willock against Hogan, and that they had collected in such action a sum of money over and above their costs, which they had refused to pay to the plaintiff, Fogerty.

Upon the trial of that action by a referee, it was proved, and the referee, in accordance with such proof, found as a fact that the defendants Ga Nun, Jordan and Bain were retained by Fogerty to prosecute the claim of Willock against Hogan. That previous to such retainer Willock had agreed that Fogerty should receive two thirds of the amount recovered. That Ga Nun, Jordan and Bain took the claim to prosecute upon the retainer of Fogerty, with full knowledge of his agreement with Willock, and has recovered the sum of three thousand dollars upon a settlement of the suit. And the referee gave judgment in favor of Fogerty as against Ga Nun, Jordan and Bain for $886 66, being the balance in their hands after deducting their costs and charges, and $700 which had been paid by them to Willock. For a report of that case (see 2 Robt. 319).

Under these circumstances the plaintiff, in this action, as the executor of Hogan, brought this action against Fogerty to recover the amount he had received from Ga Nun, Jordan

and Bain, in his suit against them on the ground, that his relation to Hogan, as his attorney and counsel in foreclosing Willock's rights and interests under the contract with Hogan, and also in detaining the release from Willock, would not allow of his becoming, or being interested in an adverse claim of Willock against Hogan, growing out of the contract he had undertaken to foreclose, and which claim had not been extinguished by the foreclosure proceedings.

Fogerty alleged, in his answer in this action, and the court found, as facts:

That after the making of the contract, Willock entered into possession of the lots, and proceeded with the erection of the buildings mentioned in the contract; and that Hogan made certain advances to Willock, as provided for by the contract. That the defendant Fogerty, then was, and ever since has been, an attorney and counsellor at law in the courts of this state, licensed and authorized as such, to practice in the courts of this state, and as holding himself out to the world to practice as a regular profession, and as such was employed and retained by Hogan to do and perform certain acts in regard to said contract and said premises. That from the fall of the year 1852, Fogerty has also been the attorney and counsel of Willock. That at the time last mentioned, Fogerty was employed by Hogan, with the concurrence and assent of Willock, to extinguish the claims of one Hamilton Nesbitt, and of certain lien holders in and to the premises, and did so extinguish the same; and for that purpose, and not otherwise, did procure from Willock the release, mentioned and set forth in the complaint, but the said release was executed by Willock upon the express condition that the same should not be delivered to Hogan, or affect the claims or interest of Willock, in or to the premises, or as against Hogan; and Fogerty was not employed or retained by Hogan to extinguish the claims or interest of Willock for any purpose, other than as above stated; and in accordance therewith, and not otherwise,

Fogerty took the proceedings, mentioned and set forth in the complaint.

It was further alleged in the answer, and found as a fact by this court :

That in April, 1859, Willock was indebted to Fogerty in the sum of twelve hundred dollars for services theretofore rendered by Fogerty to and for Willock ; and Fogerty did thereupon, in full payment of said indebtedness, take from Willock two thirds of Willock's claim against Hogan, and, therefore, in consideration thereof, did wholly remit and satisfy the said indebtedness of Willock.

It was further found, as a fact :

That Fogerty does not, in violation of his duty and obligations as such attorney and counsel for Hogan, or in contempt of the court, or of the obligations imposed on him as an attorney and counsellor of the court, give to Willock advice, or purchase or take from him an interest in his claim against Hogan, or in, or to the premises, or instigate Willock to bring said action, or make the purchase from Willock, with intent of prosecuting the said action against Hogan for his own gain or advantage, or in violation of the statute in that case made and provided.

Upon these facts, the judge rendered judgment in favor ef the defendant.

The plaintiff having excepted to the findings of law and fact, appealed.

> E. P. Cowels, *and* Roswell D. Hatch, *for the appellant and plaintiff.*
>
> William Fullerton, *and* John B. Fogerty, *for the respondent and defendant.*

*By the court,* Monell, J.—Upon the argument of this appeal, the appellant's counsel was understood to rest his right to recover, not exclusively but chiefly, upon the ground that the delicate and confidential relation of attorney and

client which has existed between these parties would not allow the respondent to take, or receive any interest in, or benefit from, any claim which Willock might have, or assert under his contract with Hogan, which had its foundation in the insufficiency of the proceedings instituted, and conducted by Fogerty for his client.

The counsel, however, was not understood to abandon the ground that the benefit which the respondent had derived from the Willock suit against Hogan was in consequence of his own lack of skill and correct judgment in instituting and conducting the proceedings, he was employed to institute and conduct to extinguish the rights and interests of Willock under the contract.

The mode adopted by the respondent to extinguish such rights and interests was by a public sale, after notice in pursuance of the provisions of this contract.

It is certainly very questionable whether such a sale, although authorized by the contract, was, or could be made effectual to foreclose the contractor's interests. The question is left open, and undecided in the case of *Chace* agt. *Hatch* (4 *Robt.*, 89), which was upon a similar contract, but with an intimation that the contractor is not shut out by such a sale, and may upon a sufficient excuse be relieved from the forfeiture.

The contract in this case provided, that if Willock refused or neglected to complete the houses, or to diligently prosecute the work; or if he suspended the work for ten days, Hogan might demand payment of his advances, and upon refusal to pay, might sell at public or private sale all of Willock's interest in the premises.

The forfeiture under the contract on the part of Willock, and the right on the part of Hogan to rescind rested wholly upon the ten days' delay. If the delay in fact occurred, Hogan could at once sell, but in what manner, or by whom was that fact to be determined? Could Hogan's saying, or claiming, that it had occurred, be sufficient, and would that

conclude Willock, and for ever preclude his disputing the fact? Assuredly not. The right to sell was unquestion-able; but it was necessarily a sale at the risk of being set aside if it should afterwards be made to appear that there had in fact been no default; or, that it had become impossible to perform either by the act of God, or of the law, or for any other sufficient reason.

The sale, therefore, under the power contained in the contract was effectual only so far as it put Willock out, and Hogan in possession of the premises, and then cast the burden upon Willock of showing, if he could show it, that there had not been a default, or of exercising it if there had been. But it left it competent for Willock, at any time afterwards, to apply to the court to investigate the question of default, and to be relieved from the forfeiture consequent upon it.

From such an application, Willock would not be, and was not precluded by the sale, nor could he be precluded in any manner short of a judgment in an action to foreclose his rights and interests under the contract.

Besides the high and peculiarly responsible duty of an attorney towards his client, and the fidelity which he owes to his cause, and his interests, he is required to be learned and skilful in the practice of his profession. He must have sufficient learning to be able to determine with reasonable accuracy upon the appropriate remedies for enforcing or securing the rights of his client, and sufficient skill to conduct the proceedings appropriate to such remedies.

If any attorney fails in any of these respects he may and sometimes does not only forfeit all claim for compensation, but renders himself liable to his client for any damage which he may thereby sustain.

But the question of any supposed lack of learning or of skill on the part of the respondent, in conducting the proceedings for his client, is not necessarily much involved in the consideration of the questions now before us.

Hatch agt. Fogerty.

Indeed, if this were an action by the respondent against Hogan's representative to recover his compensation for his services in those proceedings, it is doubtful if we could say that he should not be paid on the mere ground that such proceedings produced no beneficial result (*Bowman* agt. *Tallman* 40 *How.*, 1). But the decision must be placed upon another and different ground, which involves not the skill or the learning, but the fidelity of an attorney to the interests of his client; and which forbids his trafficking in the smallest degree with such interests by collusion or otherwise with persons who, in respect to such interests, have occupied an attitude of hostility towards his client.

Some facts stand out prominently in the case. One is, that the respondent employed the attorneys to bring the action of Willock against Hogan. Another, that he was interested to the extent of two thirds in the result of the suit, having acquired such interest directly by assignment from Willock. Another, that the foreclosure of that action was the insufficient title Hogan had acquired under the foreclosure proceedings, which the respondent had himself conducted for Hogan. And another, that he did not receive in that suit, and in consequence of it, a portion of the money which has been detained by a settlement of it, and which settlement was made in consequence of the adverse testimony of the respondent on that trial.

I am aware that the fact has been found by the court at special term, that the respondent was employed by Hogan, with the concurrence and consent of Willock, to extinguish the claims of certain lien holders on the premises, and for that purpose, and not otherwise, he made the sale of the premises under the power contained in the contract, and procured the release from Willock.

So much of this finding of fact, as relates to the purpose of the release, is probably sustained by the evidence; but I do not find any evidence sufficient to sustain the remainder of the finding; and a careful examination of the testimony

shows, I think, that the respondent's employment by Hogan, was to extinguish all of Willock's rights and interests under the contract; and that whatever motive the latter may have had in concurring in and consenting to the foreclosure proceeding, whether to defeat, and thereby defraud, his creditors who had obtained liens upon the premises, or otherwise, it is very evident that Hogan's intention and desire was to rescind the contract and put an end to all claims and rights of Willock under it.

But, even if the evidence did establish that the purpose of the foreclosure was to accomplish the defeat of the lien creditors, and that Hogan, Willock and the respondent, con spired to effect such purpose by a pretended foreclosure. I am unable to see in it any justification for what has since transpired.

Such a purpose need not be stigmatized, and it is enough for the present to say, that it furnishes no foundation upon which a defense can be raised. A party who has advised or assisted in perpetrating a wrong, cannot afterwards be allowed to use the knowledge he has acquired to secure a pecuniary benefit to himself, by an attack upon the proceedings he had advised and conducted to consummate the wrong.

I am, also, aware of the fact which has also been found by the court, that Willock was indebted to the respondent in a considerable sum for professional services, and that he took from Willock a transfer of two thirds of his claim against Hogan in satisfaction of such indebtedness.

But such fact does not, in my judgment, change the aspect of the case, or furnish a reasonable excuse for obtaining payment out of his own client; of a debt due from Willock, by a resort to an action, whose foundation was a defective and useless proceeding, which such client had employed him to conduct, and which he had failed to make effectual.

The action instituted by the respondent in the name of Willock against Hogan, if it has no foundation in the errors

which the respondent had previously committed, must have been brought for the purpose of harrassing Hogan, or vexing him into a settlement. In one or the other of these ways, only could the respondent have hoped to succeed. Hogan would be advised that the sale at the Merchant's Exchange was of itself, no bar to the action, and the release of Willock, the respondent knew, as he afterward testified, was no happier.

There was reasonable ground, therefore, for supposing that the action would be successful, or that operating upon the fears of Hogan, it would produce a compromise and settlement of the claim.

The latter was the result, and it is enough to say, that the transaction cannot be countenanced or upheld.

It is fundamental in respect to the duty of an attorney towards his client, that he should not use any information which he has derived from his client, to the prejudice or injury of his client; and especially, that he shall not act in opposition to his client's interests; and the rule is, as laid down in *Ferg. J. Prac.*, 27, that lest any temptation should exist to violate professional confidence, or to make any improper use of information which an attorney has acquired confidentially, as well as upon principles of public policy, " he will not be permitted to be concerned on one side of proceedings in which he was originally in a different interest."

I regret that I am obliged to differ from the conclusions of the learned justice, who tried this action at the special term. He was, doubtless, somewhat influenced, as I have found it difficult to resist being, by the fact, that the relation of attorney and client had long before ceased to exist between the respondent and Hogan; as well as the fact that he had for several previous years been acting as the attorney for Willock; and that to obtain payment of a hopeless debt for these services, he became a party for no more improper motive than to instigate the action which was brought in Willock's name against Hogan.

The law, however, is too regardful of the rights of persons who have fiduciary relations to allow any betrayal of the trust and confidence.   Trustees of all kinds are held to a strict accountability, and the interests of *cestui que trusts* are watched with constant care.   As was said by the late Vice Chancellor SANDFORD, in *Poillon* agt. *Martin*, (1 *Sandf. Ch. R.*, 572), " it is a great principle of equity that he who bargains in a matter of advantage with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence."

But the duties and obligations of mere trustees, whether enjoined by statute, or derived from the principles of equity, do not partake of that peculiar and delicate relation which subsists between an attorney and his client.   In his case there is more than a legal claim upon his fidelity.   The honor of his profession, and the due administration of justice is involved and any taint upon his honor will cast its shadow in some degree upon the collective body of his associates at the bar.

Luckily, and to the credit of the profession, few reported cases are found which involve a departure from professional faith and duty.   But such cases are not needed to either illustrate or enforce so obvious a principle as condemns the transaction of this case.

I will, however, refer to a single case which is somewhat analogous to the one before us.

*Case* agt. *Carroll* (35 *N. Y.*, 585), was an action to compel an attorney to convey certain premises to the plaintiff, the title to which he had obtained in violation of his duty to his client, and the court says : " The general allegation that he was the defendant's counsel, and undertook to conduct the foreclosure suit for their benefit is sufficient to create a trust which a court of equity will enforce against him, by requiring him to convey the legal title to the plaintiffs."

The judgment must be reversed, and a new trial had, with costs to the appellant, to abide the event.