BLOOMINGDALE BROS., INC., Respondent, v. LOUISE A. HUDSON, Appellant.

Supreme Court, Appellate Term, First Department, May 25, 1933.

*Leslie J. Tompkins*, for the appellant.

*Schiele & Brewer* [*James E. Brewer* of counsel], for the respondent.

LYDON, J.   This unusual motion is made under the following circumstances: Defendant had a charge account with plaintiff's department store.   She authorized plaintiff to permit purchases to be made by a third person to be charged to her account.   She says her authorization was in writing and limited such purchases to not more than fifteen dollars in value.   Purchases largely in excess of this amount were made by the person so authorized. Bills were rendered to defendant which she refused to pay.   She says that plaintiff told her that she needed a lawyer, and that when she said she did not know any lawyer, plaintiff sent her to the firm which now appears for plaintiff in the action, to whom she related all the facts of the case.   She says they told her they would see what they could do, and later requested a retaining fee of ten dollars, which she paid.   She says she called them up a few days later and asked what was being done.   They told her they were trying to locate the third person who had made the unauthorized purchases.   Having heard nothing further from them, she says that a few weeks later she retained her present attorney, who wrote plaintiff sending a check for what she admitted to be due and refusing to pay anything more.   Plaintiff's attorneys then wrote her demanding payment of the balance of the account, and threatening suit unless payment was made.   Later the present action was commenced, and defendant made her motion to require plaintiff's attorneys to retire from the case.

But the opposing affidavits put the case in an entirely different light.   They show, in substance, that the attorneys were never consulted and never undertook to act for defendant in any controversy between plaintiff and herself, but that their efforts were to be directed to locating the fraudulent purchaser in an endeavor to recover from her, in an action to be brought against her *by plaintiff*, as much as possible of the purchase price of the goods. But, the attorneys say, they explained that since the financial responsibility of the purchaser was doubtful, plaintiff would not be willing to institute an action against her at its own expense, but that if defendant cared to advance ten dollars they would institute such an action if they succeeded in locating the purchaser.

They say defendant agreed to do this; that they thereafter located the purchaser, whereupon the defendant paid them the promised ten dollars, and they issued a summons and gave it to a process server who failed to effect such service because the intended defendant had left the city and gone to Philadelphia without any intention of returning. Thereafter, they say, they were advised by plaintiff that defendant had refused to pay the balance of her account, and were directed to bring the present action, which they did.

The foregoing is an attempt to summarize, briefly, the main contentions of the respective parties.

The court denied the motion and adhered to the decision on reargument, writing a short memorandum stating the reasons, and allowing this appeal.

It is difficult to see what purpose can have suggested this motion. Perhaps the real purpose may be the desire, expressed by counsel for appellant in his brief, to establish the principle that the Municipal Court has jurisdiction, in such a case, to grant the relief asked and would have been justified in exercising it.

The argument seems to be that the Municipal Court, being a court of record, has inherent power to discipline attorneys who appear before it; that the relation of attorney and client has been established in the present case and that the attorneys have violated the canons of ethics in various ways and should, therefore, be disciplined by compelling their retirement from the case. Most of this argument is quite irrelevant. No doubt the Municipal Court has some right to exercise control over attorneys appearing before it. No doubt, in a proper case, it could adjudge an attorney in contempt for misconduct in its presence. But certainly it cannot be supposed to have any power to discipline attorneys for general misconduct or for violation of the canons of ethics. Even if it were conceded that under the authority of some of the cases cited by defendant the court would have the power to forbid the attorneys' continuance in the case if it were established that they had theretofore represented the other party in the very controversy which gave rise to the action, the papers in the present case do not establish that these attorneys had previously acted for defendant in any proper sense of the word. They claim that they were at all times acting for the plaintiff, and that they offered to bring an action in plaintiff's name provided defendant would guarantee plaintiff against the expense to be incurred to the extent of ten dollars. It is true that in doing this they would, on their own theory, have been conferring a benefit on defendant, since anything they might recover from the fraudulent purchaser would reduce, to that extent,

defendant's liability on her account. But it is quite clear that this proposal and the subsequent effort to carry it into effect did not create the relation of attorney and client between the attorneys and defendant, and it would be going too far to say that the circumstances were shown to be such as to preclude the attorneys from acting for plaintiff in the present action. Furthermore, let us look into the merits. What single fact was, or could have been revealed to the attorneys in their interview with defendant that might be used to her prejudice? Her entire story was told at the store of the plaintiff, and when she called at the attorneys' office she repeated the same story.

Further fault is found with the attorneys for putting in what is asserted to be a sham reply to a defense set up in defendant's answer. Assuming this charge to be established, it is, of course, wholly irrelevant on the present motion.

Order affirmed, with ten dollars costs.

FRANKENTHALER, J., concurs; LEVY, J., dissents.

LEVY, J. (dissenting). This appeal is by permission of the court below from an order denying a motion of defendant to require the present attorneys for the plaintiff to retire from the cause. The ground of the motion is that prior to the institution of the action they accepted a retainer from defendant to represent her in the controversy. The action is for goods sold and delivered. Defendant had a charge account with the plaintiff during 1931. In the middle of that year she authorized a Miss Fluke to make purchases against that account, with the understanding, which she claims to have conveyed to plaintiff in writing, that the amount of such purchases was not to exceed the sum of fifteen dollars. When she received bills approximating the sum of $400, most of which represented purchases made by Miss Fluke, she registered complaint at the store of plaintiff. The assistant credit manager in charge of her account suggested that she proceed against Miss Fluke, and upon her request for the co-operation of plaintiff in the recovery of the amount of the purchases from that person, he directed her to plaintiff's present attorneys " to render any assistance within their power to accomplish that result." Thereupon defendant called upon these attorneys and, as they admit, requested them " to take such action and proceeding on behalf of Bloomingdale Bros., Inc., as might result in their collecting from Mildred Fluke as much as possible of the purchase price." The attorneys were disinclined to do so, because they believed that lady to be financially irresponsible. Finally they agreed to undertake to

recover from Miss Fluke on behalf of plaintiff, if defendant would advance the sum of ten dollars, which she did. The attorneys prepared a summons in an action against Miss Fluke, but finding it difficult or impossible to serve her, they abandoned any further steps in that direction. On being thereafter informed that defendant refused to pay the balance of the account which comprehended the Fluke items, they instituted suit against her, according to plaintiff's instructions.

Upon these facts, which are virtually admitted, the court below refused to direct the attorneys to withdraw, on the ground that " there is a serious doubt as to whether the attorneys for the plaintiff ever appeared for this defendant in the above entitled action."

What was the purpose, it may be asked, for which the attorneys requested defendant to advance the sum of ten dollars? The small sum, to be sure, could not be intended to fully compensate them for their services, but it might be said to be in the nature of advance disbursements in a contemplated action. If the latter was to be brought on behalf of Miss Hudson as plaintiff against Miss Fluke as defendant, there would be little doubt of the impropriety of a subsequent appearance by these attorneys on behalf of the present plaintiff against their former client.

The general rule is thus stated in *Hatch* v. *Fogerty* (40 How. Pr. 492, 503): " It is fundamental in respect to the duty of an attorney towards his client, that he should not use any information which he has derived from his client, to the prejudice or injury of his client; and especially, that he shall not act in opposition to his client's interests; and the rule is, as laid down in Ferg. J. Prac. 27, that lest any temptation should exist to violate professional confidence, or to make any improper use of information which an attorney has acquired confidentially, as well as upon principles of public policy, ' he will not be permitted to be concerned on one side of proceedings in which he was originally in a different interest.' "

Here, the attorneys take the position that they never represented the defendant, but that the item of ten dollars was a mere disbursement furnished by her in an action to be instituted by this very plaintiff against Miss Fluke. Assuming this to be the fact, was the action against the latter intended for the advantage of the plaintiff or for the benefit of the defendant? A consideration of the circumstances compels me to the conclusion that the abortive Fluke action was primarily designed for the benefit of the defendant, and initiated at her very request. Without any further effort beyond attempting to secure service of the process upon Miss Fluke, these attorneys abandoned the proposed action and began a suit

against Miss Hudson. In doing so, it seems to me, they placed themselves in an equivocal position. Their previous services, even if prompted by their loyalty to the plaintiff, were influenced to a substantial degree, at least, by the request of Miss Hudson, and by her willingness to advance the disbursements.

Moreover, while no action against Miss Fluke actually had been commenced, the obligation to proceed with such suit nevertheless continued. If their client refused to permit them to continue in the Fluke suit and insisted upon action against Miss Hudson, it is perfectly patent that these attorneys could not undertake such a charge without some measure of infidelity to the confidence reposed in them by this defendant. I feel with Lord Chief Justice HOBART (*Yardley* v. *Ellill*, Hob. 8, 9) that an attorney " oweth to his client fidelity, secrecy, diligence and skill," and cannot take a reward on the other side. The client here in need of professional assistance was directed to these, her legal advisers. The relation which sprang up between them made necessary that she " lay her case " before them. In doing this, she naturally made disclosures which in the eyes of the law are privileged communications. These may be said to have been made with the absolute confidence that the guaranty of inviolable secrecy is cast over them. Obviously, this veil may never be drawn aside so as to expose them to public scrutiny.

Quite apart from the opportunity which these attorneys had to obtain from the defendant *ante litem motam* her version of the transactions, they are now in a position where, while an undischarged promise to the defendant is yet unfulfilled, they have begun an action against her.

Accordingly, I view their role as attorneys for the present plaintiff as inconsistent with their previous activities at the request and in behalf of defendant. While I do not regard their conduct as willful or the subject of censure, I believe this practice, no matter how innocent, of dangerous tendency, and should be discountenanced.

In the circumstances I dissent and vote that the order be reversed and the motion granted.