## SEAWARD v. DAVIS.

(Supreme Court, Appellate Division, Second Department. June 4, 1909.)

1. TRUSTS (§ 125*)—SUBJECT OF TRUST.

Where property was bequeathed to K. for life, with the beneficial power of disposition thereof, remainder to others, the subject of the trust arising on her personally receiving the property, if more than what has not been beneficially used by her at her death, shifts from time to time to what remains.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 125.*]

2. TRUSTS (§ 372*)—ACCOUNTING—BURDEN OF PROOF.

The remaindermen in an action for an accounting against K.'s executor, K. having received property bequeathed to her for life, with beneficial power of disposition thereof, remainder to others, have the burden of showing that at the death of K. there was a remainder, to which they were entitled; and the executor is not to be charged in the first instance with what came to K., with the duty of showing what part of it had been used by K.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 600; Dec. Dig. § 372.*]

3. TRUSTS (§ 244*)—ACCOUNTING BY TRUSTEE'S EXECUTOR.

Trusts of personalty vest in the executor of the trustee, and, by accepting the office of executor, he becomes liable for any amount coming into his hands, and as to such amount must settle an account of the testator in relation to the trust, and pay it over to the beneficiaries.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 351; Dec. Dig. § 244.*]

4. TRUSTS (§ 372*)—ACCOUNTING—RIGHT TO AN ACCOUNT.

An admission that K. left $5,000 in personal property, though with the qualification that it was not received from her husband's estate, justifies a decree for an accounting by her executor to the remainderman as to personal property the husband bequeathed her for life, with beneficial power of disposition thereof, remainder to others; it not being necessary

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the obtaining of an account that the cestui que trust show that anything will be his due.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 372.*]

5. TRUSTS (§ 354*)—MINGLING OF TRUST PROPERTY WITH PROPERTY OF TRUSTEE.
While K., to whom personalty was bequeathed for life, with beneficial power of disposition, remainder to others, was not bound to keep the property so received separate from any other property she had, and incurred no penalty or forfeiture by mingling the two, without fraud, equity will follow to separate the properties, and put on the accounting party the burden of distinguishing them.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 527, 528; Dec. Dig. § 354.*]

Hirschberg, P. J., and Burr, J., dissenting.

Appeal from Special Term, Kings County.

Action by George W. Seaward, administrator with the will annexed of William Z. King, deceased, against Buell G. Davis, executor of Mary E. King, deceased. From a final judgment, and also from an interlocutory judgment, for plaintiff, defendant appeals. Interlocutory judgment modified and affirmed. Final judgment reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, GAYNOR, JENKS, and BURR, JJ.

Frederick H. Tasker, for appellant.
Robert H. Wilson, for respondent.

JENKS, J. This appeal from a final judgment brings up the interlocutory judgment. The action is by the administrator c. t. a. of King against the executor of King's widow. King's will, as construed by us in Tuthill v. Davis, 121 App. Div. 290, 105 N. Y. Supp. 672, gave to his wife the use of both the real and personal property during her life, with the beneficial power of disposition of the latter, remainder to certain specified persons. Mrs. King, as executor of her husband, made final accounting in the Surrogate's Court, and by its decree she personally came into possession of $17,268.50 in chattels, money, and bonds. The theory of the action is that the defendant in his representative capacity should account for this personal property, and it went to judgment for the total amount thereof, with interest. Mrs. King did not take this personal estate as a corpus, to be preserved by her as trustee for the remaindermen. She was not limited by the terms of the will in the use or consumption or disposition thereof during her life. She was regarded as a trustee or quasi trustee as to any remainder which she had not used, consumed, or disposed of during her life. Thus in the principal case relied upon by the appellant—Smith v. Van Ostrand, 64 N. Y. 278—the court say:

"This disposition, if valid, would entitle the plaintiffs to so much of the fund as on her death remained unexpended for her support, and this portion of the fund she held in trust for them."

Or, even if such a trust was fastened on the personalty when she personally received it, she was in no way hampered in her personal use, consumption, or disposition of this estate, or required to account as if for a trust fund to be kept intact, but the trust, so to speak,

shifted from time to time from what she personally used, consumed, or disposed of, to what remained, and thus it might become barren before she died or at the time of her death. In such an action it must appear that the party called to account must have been intrusted with property of the plaintiff, and is bound to show his dealings with it. There must be a fiduciary relation. Schantz v. Oakman, 163 N. Y. 148, 57 N. E. 288; Marvin v. Brooks, 94 N. Y. 71. I think that the burden was upon the remaindermen to show that there was at the death of Mrs. King a remainder to which they were entitled within the principle of the rule established in Swarthout v. Ranier, 143 N. Y. 504, 38 N. E. 726. I do, not, however, mean to say that the mere fact that there was no corpus extant at her death was absolutely conclusive against the remainderman. Swarthout v. Ranier, supra; Perry on Trusts (5th Ed.) 540, note "a." Trusts of personalty vest in the executor (Schenck v. Schenck, 16 N. J. Eq. 182, and authorities cited), and by accepting the office of executor the defendant became liable for any amount which came into his hands. As to such amount it became his duty to settle an account of the testator in relation to the trust, and to pay over any estate found due to the beneficiaries. Perry on Trusts, §§ 264, 344; Schenck v. Schenck, supra; Moses v. Murgatroyd, 1 Johns. Ch. 118, 7 Am. Dec. 478.

The Special Term found that Mrs. King did not during her lifetime use or dispose of for her own personal use all of the said personal property and assets, but that at her death part thereof was in her possession, and was received by and now is in the possession of the defendant. Thereupon it made an interlocutory decree that the defendant file an account of the acts of Mrs. King with reference to the personal property received by her, that the defendant charge himself in that account with $17,268.50, together with interest, and, upon failure to file said account, that final judgment follow. After delay the defendant filed an account wherein he stated that, so far as he had been able to ascertain with due diligence, the said Mrs. King kept no account of the funds and property which she received from the estate of her husband, set forth the inventory of her husband's estate as filed, showed that the appraisers had set aside certain assets for the widow, and of the remaining assets, which principally were made up of $300 cash, $1,000 on deposit in the Seamen's Bank, and $15,820 in bonds, that he found and filed an account of certain chattels valued at $63.50. The account closed as follows:

"I have found no cash in the Seamen's Bank for Savings, nor any government bonds among the assets left by Mary E. King, deceased, nor have I found any records or accounts showing what became of the said funds."

Thereupon the plaintiff moved the Special Term for final judgment on an affidavit that the defendant had not obeyed the interlocutory judgment, in that (principally) he had not charged himself in the account with the said $17,268.50. The defendant filed an affidavit attempting to show his good faith and his difficulties. The court directed final judgment. The account as filed was not a compliance with the interlocutory decree. And, indeed, it is unsatisfactory, as, e. g., the final statement thereof (supra) may be entirely consistent with the

fact that both the cash left and represented by the deposits of the husband of Mrs. King and the proceeds of the bonds (due in 1907) may have come into the defendant's hands. But I think that the trial did not establish that the defendant was chargeable with this $17,268.50 in the sense that it was a trust fund which existed at the death of the testator. The plaintiff offered no evidence which showed or which tended to show that any part whatever of this personalty remained at Mrs. King's death, or even should have remained. The plaintiff's case rests upon proof that this amount was received by Mrs. King under a decree of the Surrogate's Court, and an admission that Mrs. King left $5,000 in personal property, but qualified, in that it was not received from her husband's estate. Despite the qualification, this admission would be sufficient to justify a decree for an account. Perry on Trusts, § 128. If Mrs. King had property from other sources, she was not bound to keep the property received from her husband's estate separate, and she incurred no penalty or forfeiture by mingling the two without fraud. But equity will follow to separate the properties, and put upon the accounting party the burden of distinguishing them. Cox v. Wills, 49 N. J. Eq. 573, 25 Atl. 938, and cases cited. Although an account is not a matter of right, it is not essential in order to obtain it that the cestui que trust should show that anything will be his due. Frethey v. Durant, 24 App. Div. 61, 48 N. Y. Supp. 839. I think that the conclusion of the Special Term that there must be an account should not be disturbed. But I advise that the interlocutory judgment be modified, in that it should not charge against the defendant this $17,268.50 as if it was a remainder for which the testator or her successor must account. The amount thus received might, of course, be relevant on the accounting, but mere proof of its receipt did not establish prima facie that such sum was the remainder upon which a trust for the remaindermen fastened.

The interlocutory judgment modified, and, as modified, affirmed, without costs. Final judgment reversed, without costs.

WOODWARD and GAYNOR, JJ., concur.

BURR, J. (dissenting). This action relates to the personal property of which William Z. King died possessed. By his will his widow, Mary E. King, was given the use of the said personalty during her life. If this had been the only provision of said will relating to her, the determination of this case would be easy, for she would still hold the property in trust for those who might be entitled to the same after her death. The corpus of that trust would be the entire fund which she received. Hitchcock v. Peaslee, 145 N. Y. 547, 40 N. E. 211; In re McDougall, 141 N. Y. 21, 35 N. E. 961. But Mrs. King was entitled, not only to use the income of the personalty during her life, but also so much of the principal as was beneficial to her. Her power of disposition was not absolute so as to make her the complete owner of the property, but such power of disposition was limited to that which was necessary for her own benefit. Tuthill v. Davis, 121 App. Div. 290, 105 N. Y. Supp. 672.

Does this fact alter the corpus of the estate as to which she stood in a trust relation? In other words, did she take the entire personal estate of William Z. King charged with a trust duty, which was to preserve it for the remainderman except in so far as she terminated the trust by using all or a portion of it during her life, or did she take such property, to quote from the opinion of Mr. Justice JENKS, "as a trustee or quasi trustee" only "as to any remainder which she had not used, consumed, or disposed of during her life"? If we adopt the latter construction, we have the strange anomaly of a person becoming trustee or for the first time occupying a trust relation to a fund at the moment of death, when it was impossible to discharge the duties of such trust relation. It seems to me clear that the trust arose in her lifetime, and in every one of the cases cited or which I have been able to find such language has been employed in respect to the time when the trust arose. In Chaplin on Express Trusts and Powers, p. 110, the writer says:

"He [testator] may confide the custody of the corpus to the legatee for life, with right to use the same, with remainder over. Such provisions are not inconsistent. The legatee is then during life a trustee of the corpus for the remainderman. * * * And this is still so though the life tenant is given conditional power of consuming the principal; e. g., so far as necessary for his support. He is still trustee of the property for the remainderman in so far as not thus needed."

In Flanagan v. Flanagan, 8 Abb. N. C. 413, the gift of testator was to his wife of "the use of all the remainder during her life, and the portion left of said remainder to be distributed to the poor of St. Peter's Church." Although the remainder to the poor of the church was held void for indefiniteness, the court held that the relation of the widow to the fund was that of trustee for those ultimately entitled to the remainder. The court say:

"The effect of the bequest in this case confides the fund to the legatee for life, to the end that she may exercise her power of disposition over it. She will be deemed to hold as trustee for the poor of St. Peter's Church or the heir at law whatever shall remain or continue undisposed of in her hands. But the trust may perhaps be a barren one ultimately as regards the cestui que trust, inasmuch as the plaintiff has it in her power at any time to foreclose all claim of such party by a consummated effectual disposition of the entire fund. Still she will remain as trustee of the fund so long as it shall continue in her hands undisposed of."

In Matter of Cornell, 170 N. Y. 423, 63 N. E. 445, the court said:

"Though possession of the securities was given to the donee, this did not make him their absolute owner."

In Smith v. Van Ostrand, 64 N. Y. 278, where a life interest and remainder were created in a fund and the testator directed the fund to be turned over to the life tenant, it was held that this did not make the gift to the life tenant absolute, but that she held the fund as trustee for the remainderman. From all these cases it seems quite clear that the trust relation arose in the lifetime of Mrs. King, and that she was the person who was charged with the performance of the trust duties. If the trust arose in her lifetime, the subject of the trust could not be what she left unconsumed or undisposed of at her death. It is

impossible to conceive of a trust relation without both a trustee who owed certain trust duties, and property which is the subject-matter of the trust. But what was left unconsumed and undisposed of at the time of Mrs. King's death could not be the only subject-matter of the trust; for then the trust could not begin in her lifetime, since up to her death there was no defined subject-matter of the trust. If it did begin in her lifetime, then, in the first instance, the trust duty must have related to what she received from her husband's estate. That trust was only completely discharged when she either preserved the principal for the remainderman, or consumed and made use of a portion of such principal for her own benefit during her life. When the trust relation exists, the burden of accounting rests upon the party occupying such relation. Marvin v. Brooks, 94 N. Y. 71. In this case that burden is met by showing either that the entire fund has been preserved for the remaindermen or that a portion of the fund has been used in accordance with the provisions of the will for her own benefit. This seems to me to furnish the only consistent, logical, and workable rule. The person who occupied a trust relation to the entire fund which was received from her husband's estate when it came into her possession better than any one else in the world is in a position to know and to keep account of what disposition she made of it. The law requires her to keep such account, so that after her death her personal representative may be in a position to render such account and turn over the fund which she received, or to show that as to the whole or a portion of such fund the trust has been terminated, because she made use of such fund for her own benefit. It was therefore entirely proper to charge the defendant in this action with the property received from William Z. King's estate.

Whether this was done in the interlocutory judgment or in the final judgment is immaterial. Upon the accounting, which concededly the court was justified in requiring the defendant to make, any sums which were properly expended out of the principal received, either for purposes of administration of William Z. King's estate or by the life tenant for her own use, could be credited to her. The defendant here has shown a lack of candor and fairness in the entire proceeding, and has apparently sought to obscure rather than to make clear the real situation. If, as the result of this, he has been held accountable for a larger sum than was justified by the real facts, he has only himself to blame.

I vote to affirm both the interlocutory and the final judgment appealed from, with costs.

HIRSCHBERG, P. J., votes to affirm.