SEAWARD v. TASKER.

(Supreme Court, Trial Term, Kings County.　September, 1913.)

1. JUDGMENT (§ 957*)—EVIDENCE TO IMPEACH—SUFFICIENCY.
In an action wherein plaintiff's right to recover depended on the validity of the judgment in a former action against the estate of a deceased executrix, evidence *held* to show that the attorney for plaintiff in such former action and a justice of the Appellate Division by which such judgment was affirmed had both acted as attorney for such executrix with regard to the matters involved in that action.
[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1826; Dec. Dig § 957.*]

2. ATTORNEY AND CLIENT (§ 20*)—DISABILITIES—ACTING FOR ADVERSE PARTY.
A member of a firm of attorneys which acted for an executrix and legatee under a will, in probating the will, administering the estate, and accounting, violated his professional duty by acting as attorney for the plaintiff in an action against the executor of such deceased executrix and legatee to compel an accounting for property turned over to her for life with power of disposition.
[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 27, 29; Dec. Dig. § 20.*]

3. ATTORNEY AND CLIENT (§ 30*)—DISABILITIES—ACTING FOR ADVERSE PARTY.
A member of a firm of attorneys is included in the retainer of the firm and a party to the confidential relation so as to make it improper for him to subsequently act for an adverse party relative to the same matter, even though the first client's business is entirely conducted by another member of the firm.
[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 43; Dec. Dig. § 30.*]

4. JUDGES (§ 47*)—DISQUALIFICATION—ACTING AS COUNSEL.
Under Judiciary Law (Consol. Laws 1909, c. 30) § 15, providing that a judge shall not sit as such in, or take any part in the decision of, a cause or matter to which he is a party, or in which he has been attorney or counsel, or in which he is interested, it was unlawful for a justice of the Appellate Division, who had formerly acted as attorney for an executrix and legatee in probating a will, administering the estate, and accounting, to sit as a member and take part in the decision of that court on an appeal in an action against the executor of such executrix and legatee to compel an accounting for property received by her for life with power of disposition.
[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 214–219, 222, 223; Dec. Dig. § 47.*]

5. JUDGMENT (§ 9*)—DISQUALIFICATION OF JUDGE—EFFECT.
Under Judiciary Law (Consol. Laws 1909, c. 30) § 15, prohibiting judges sitting in or taking part in the decision of causes or matters in which they have been attorney or counsel, a determination of the Appellate Division, participated in by a justice who had been attorney with regard to the matters involved, was void, although the majority of the court rendered a judgment contrary to the opinion of such disqualified justice.
[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 9;* Judges, Cent. Dig. §§ 237, 239.]

6. JUDGMENT (§ 957*)—EVIDENCE TO IMPEACH—SUFFICIENCY.
In an action wherein the judgment in a former action was relied on as showing plaintiff's right to recover, evidence *held.* to show that, when such

---

fcrmer action was in the Court of Appeals, plaintiff's attorney in his brief willfully suppressed the truth and falsely stated a material fact.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1826; Dec. Dig. § 957.*]

7. JUDGMENT (§ 9*)—DISQUALIFICATION OF JUDGE—EFFECT.

Under Judiciary Law (Consol. Laws 1909, c. 30) § 15, prohibiting judges sitting as such in, "or" taking any part in the decision of, causes or matters in which they have been attorney or counsel, a determination of the Appellate Division was void where a justice who sat as a member of the court had formerly been attorney with respect to the matters involved, although he did not vote on such determination, especially where the Appellate Division in effect adopted his dissenting opinion on a former appeal.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 9;* Judges, Cent. Dig. §§ 237, 239.]

8. POWERS (§ 4*)—"ABSOLUTE POWER OF DISPOSITION"—PERSONAL PROPERTY.

The definition of an "absolute power of disposition" as a power of disposition by means of which the grantee is enabled in his lifetime to dispose of the entire fee for his own benefit, contained in Real Property Law (Consol. Laws 1909, c. 50) § 153, applies to personal as well as to real property.

[Ed. Note.—For other cases, see Powers, Cent. Dig. § 4; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 1, p. 42.]

9. MONEY RECEIVED (§ 1*)—NATURE AND FORM OF REMEDY.

In an action for money had and received, plaintiff's right to recover is to be determined on principles governing courts of equity.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 1; Dec. Dig. § 1.*] .

10. JUDGES (§ 56*)—DISQUALIFICATION—EFFECT OF ACTS AND PROCEEDINGS.

Where a biased judge sits as a member of an appellate court, the court, on that fact being brought to its attention, must set aside its determination and allow a reargument.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 235–245; Dec. Dig. § 56.*]

11. JUDGMENT (§ 9*)—DISQUALIFICATION OF JUDGE—EFFECT.

A court of equity, in an action wherein the right to recover was based on the judgment in a former action, would disregard the determination of the Appellate Division in such former action, where it appeared that a disqualified judge sat as a member of that court.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 9;* Judges, Cent. Dig. §§ 237, 239.]

12. JUDGMENT (§ 509*)—INVALIDITY—PROCURING BY · MISREPRESENTATION OR VIOLATION OF ATTORNEY'S DUTY.

A decision obtained through an attorney's violation of his confidential relation towards a former client, or by a misrepresentation to the court of a material fact, would not be enforced in behalf of the party guilty of the offense.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 951, 952; Dec. Dig. § 509.*]

Action by George W. Seaward, as administrator with the will annexed of William Z. King, deceased, against Frederick H. Tasker. On motion by plaintiff to set aside the dismissal of the complaint on the merits after a trial by the court and jury and for a new trial. Motion for new trial denied, and complaint dismissed.

See, also, 80 Misc. Rep. 570, 141 N. Y. Supp. 618.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Robert H. Wilson, of New York City, for plaintiff.
Frederick H. Sanborn, of New York City, for defendant.

SCUDDER, J.  On the settlement of the order setting aside the
verdict directed in this case and dismissing the complaint on the mer-
its in accordance with the court's opinion herein (80 Misc. Rep. 570,
141 N. Y. Supp. 618), plaintiff's counsel insists, on the purely technical
ground that the decision of the motion to dismiss the complaint was
not reserved at the trial, that plaintiff is entitled to a new trial, and
that the court is now without power to dismiss the complaint.  This
technical contention of plaintiff's counsel is without substance or
merit.  In the order dismissing the complaint, which order I have pre-
pared and signed, I have endeavored to recite fully and accurately
what occurred on the trial when the motions to dismiss the complaint
were made.  It is unnecessary to repeat that recital; let it speak for
itself.  Upon the trial the court did express its intention to reserve its
decision of the motion to dismiss the complaint.  Even if the court
had not done so, the reservation of the decision of the motion to dis-
miss is necessarily implied.

Plaintiff offered in evidence voluminous records covering seven
years of litigation which could not be examined at the trial.  There
was no conflict of evidence.  The controversy which the court was
called upon to decide embraced questions of law only.  The court
could not determine as a matter of law whether or not the complaint
should be dismissed until it had gone over these records.  The prin-
cipal ground for the dismissal of this complaint, overshadowing all
grounds dependent on mere rules of practice, is the inherent power of
a court of justice at any stage of an action to decline to be used as
an instrument of oppression and wrong.  To make clear my meaning
as affecting this motion, certain facts set forth in my opinion herein
(80 Misc. Rep. 570, 141 N. Y. Supp. 618) will be again discussed.

The action before me is for money had and received.  Plaintiff, as
administrator c. t. a. of the estate of William Z. King, seeks to re-
cover from defendant, a lawyer, all moneys which were paid him both
for fees and disbursements during the seven-year litigation of the
case of Seaward v. Davis.  Davis was made defendant in that action
because he was the executor of the estate of Mary E. King.  Plaintiff
in the action before me claims that the money paid to the defendant,
Tasker, by Davis was money belonging to the estate of William Z.
King in that it had been finally adjudged in the action of Seaward v.
Davis that all the property of Mary E. King at the time of her death,
and which came into the hands of Davis as her executor, belonged to
the estate of William Z. King, the husband of Mary E. King.  In
support of his claim, plaintiff put in evidence in the present action all
the records in the case of Seaward v. Davis.  The sole question be-
fore me is whether or not these records show that a valid judgment
was recovered against Davis.

In my opinion I gave a detailed history of the litigation in the case
of Seaward v. Davis.  In doing this, I referred to certain actions and
conduct of Mr. Justice Burr and Mr. Robert H. Wilson in connection
with that case and their previous relation to Mary E. King as her

attorneys through their membership in the firm of Burr, Coombs & Wilson. Plaintiff's present application for a new trial makes it necessary to state more explicitly why reference was made to their actions and conduct in my opinion, and why their actions and conduct render the judgment in Seaward v. Davis wrongful, illegal, and ineq- uitable so that it cannot be followed or recognized in the action before me. My conclusions in thus holding, in so far as they involve these gentlemen, are, in substance, that, although statute and principles of law disqualified Mr. Justice Burr from taking any part in the judicial hearing of the case of Seaward v. Davis, he nevertheless took part therein; and that Mr. Wilson deceived the court and also violated the confidential relation of attorney and client. I am well aware of the gravity of these conclusions. It is a crime for an attorney to deceive the court. Penal Law (Consol. Laws 1909, c. 40) § 273. A justice of the Supreme Court may be removed for misfeasance or malfeasance in office. Although my conclusions are reached in this, a civil action, the ordinary rules as to the sufficiency of evidence to support a finding in such an action do not and should not apply here. Facts on which such conclusions rest, even though reached in a civil action, must be supported by nothing less than conclusive and indisputable evidence.

The burden of verity sits heavily. I have again gone over most carefully the facts stated in my opinion and find no statement of fact therein requiring correction. General allegations of fraud, illegality, and wrong are not permissible and should not be made. The facts upon which such conclusions rest must be pointed out to give such allegations weight or substance. The basic fact on which my conclusion rests, that the judgment against Davis was illegally and wrongfully obtained, is the fact that the law firm of Burr, Coombs & Wilson acted as the attorneys of Mrs. King in the settlement of her husband's estate, of which she was the executrix, procuring a decree for her adjudging her to be the sole legatee under his will (see note A), and that Mr. Justice Burr and Mr. Wilson were members of that law firm.

[1] Exactly what Burr, Coombs & Wilson did, and what Mrs. King did, during the period of their relation as attorney and client is therefore a matter of prime importance. In the notes subjoined hereto are set forth the more important evidentiary facts showing the relationship between Mrs. King and Messrs. Burr, Coombs & Wilson.

On January 1, 1905, Mr. Burr became a justice of the Supreme Court and thereby ceased to be a member of the firm of Burr, Coombs & Wilson. His partners continued the law business under the name of Coombs & Wilson.

In June, 1905, Mrs. King died, leaving a will disposing of all her personal property. Buell G. Davis, her brother, was appointed and qualified as her executor. Coombs & Wilson were retained by the remaindermen named in the will of William Z. King. These attorneys secured the appointment of an administrator c. t. a. of Mr. King's estate and commenced an action for an accounting against Mrs. King's executor, Davis, upon the theory that Mrs. King was trustee for the remaindermen of all the personal property she received under the

will of her husband. This action was commenced on September 30, 1905.

Repetition here of the history of this litigation is unnecessary. My opinion fully sets it forth. 80 Misc. Rep. 570, 141 N. Y. Supp. 618. For the purpose of this memorandum, it is sufficient to refer to such portions only of that litigation as bear upon the actions and conduct of Mr. Justice Burr and Mr. Wilson and render invalid the judgment finally recovered against Davis.

[2] First. Mr. Wilson violated the professional duty which he owed to Mrs. King in bringing the action against Mrs. King's executor in behalf of parties claiming adversely to her in the same matter in which he had acted for her as attorney. The principles of the legal profession which Mr. Wilson violated are well established.

In the case of In re Boone (C. C.) 83 Fed. 944, at page 952, the court says:

"It is the general and well-settled rule that an attorney who has acted as such for one side cannot render service professionally in the same case to the other side, nor in any event, whether it be the same case or not, can he assume a position hostile to his client and one inimical to the very interests he was engaged to protect; and it makes no difference in this respect whether the relation itself has been terminated, for the obligation of fidelity and loyalty still continues. ＊ ＊ ＊ Of course it is conceded that an attorney may represent his client's adversary with perfect propriety whenever their interests are not hostile to each other. The test of inconsistency is not whether the attorney has ever appeared for the party against whom he now proposes to appear but it is whether his accepting the new retainer will require him, in forwarding the interests of his new client, ·to do anything which will injuriously affect his former client in any matter in which he formerly represented him, and also whether he will be called upon, in his new relation, to use against his former client any knowledge or information acquired through their former connection."

In support of the above proposition numerous cases are cited by the court.

In Weeks on Attorneys it is said in section 120:

"Attorneys in England have, in pursuance of the summary jurisdiction of the court, been committed to the Fleet and their names stricken from the rolls for accepting a retainer on both sides. In other cases the court has, on motion, set aside proceedings and imposed the costs upon the attorney."

In Cyclopedia of Law and Procedure, vol. 4, at page 920, it is said:

"As it is the duty of an attorney, growing out of the relations between himself and his client, to devote all his skill and diligence to the interests of his client, he cannot act for the adverse party in the same suit, even though his motives are honest; and even after the relation has ended he cannot assume a position antagonistic to his former client's interest."

In Hatch v. Fogerty, 40 How. Prac. 492, 501, it is held that the fidelity of an attorney to the interest of his client "forbids his trafficking in the smallest degree with such interests by collusion or otherwise with persons who, in respect to such interests, have occupied an attitude of hostility towards his client."

It is apparent from the foregoing authorities that ethics forbid an attorney who has advised a client as to the law in a certain matter to take the position in behalf of an adverse party that the actions of his former client in accordance with his advice to him are illegal. An at-

torney's professional obligation to his client does not cease with the payment of the fee but continues for all time as to the matter which the client confided to him. A layman who follows the legal guidance of his attorney should be assured that the attorney will not be permitted to make profit by misguiding him. To allow otherwise obviously would be contrary to good morals and public policy and would encourage a species of professional treachery which would destroy all confidence in the legal profession.

If Mr. Wilson's 'new clients, claiming adversely to Mrs. King, his former client, of their own accord sought out and retained Mr. Wilson to bring this action, may it not be inferred that they were prompted to so do by reason of their belief that Mr. Wilson's knowledge of Mrs. King's affairs, through his services to her as one of her attorneys, would be useful to them? On the other hand, if Mr. Wilson solicited these remaindermen for a retainer, would he not be chiefly recommended in their eyes because of their belief that his knowledge of the matter through his services as one of the attorneys of Mrs. King would benefit them? It makes no difference in such a case whether the buyer sought the seller or the seller sought the buyer; in the eyes of the law what was sold was knowledge obtained by means of the confidential relation of attorney and client. Equity will prevent. such traffic.

There can be no question but that Mr. Wilson and Mrs. King occupied the relation of attorney and client in the procuring of the decree' settling her account as executrix of her husband's estate. See note A. Mrs. King retained the firm of Burr, Coombs & Wilson as her attorneys in procuring this decree. The decree recites that it is made upon the motion of that firm; Mrs. King paid to that firm their charges for the legal services rendered to her. See notes B and C.

[3] Mr. Wilson was a member of that firm and as such was included in Mrs. King's retainer, even though her business was entirely conducted by another member of the firm. See 4 Cyc. 969. Although Mr. Wilson may not have personally acted for Mrs. King, nevertheless the confidential relation of attorney and client subsisted between them, which equity will compel him to observe. See Earl Cholmondeley v. Lord Clinton, 19 Ves. 260, 273; Griffiths v. Griffiths, 2 Hare, 587.

Coombs & Wilson continued the law office of Burr, Coombs & Wilson when Mr. Burr became a Supreme Court justice on January 1, 1905. A few months later, Mrs. King, the client of Burr, Coombs & Wilson, died. Mr. Wilson promptly thereafter accepted a retainer and took steps toward bringing an action against the executor of Mrs. King in behalf of the remaindermen named in the will of William Z. King, which remaindermen claimed adversely to Mr. Wilson's former client, Mrs. King.

The complaint which Mr. Wilson drew in behalf of his new clients alleges the probate of the will of William Z. King and annexes a copy of that will; Burr, Coombs & Wilson, as the attorneys of Mrs. King, secured the probate of the will. See note C. The complaint alleges that William Z. King died possessed of personal property of the value of $17,458.75. This is the valuation stated in the inventory of his es-

tate; Burr, Coombs & Wilson, as the attorneys of Mrs. King, caused this inventory to be made. The complaint alleges that Mary E. King paid and turned over to herself personal property amounting to the sum of $17,346.23. This amount was arrived at by deducting from $18,158.75, the amount with which Mrs. King charges herself in her account as executrix of her husband's estate, the sum of $812.52, the aggregate of the amounts with which she credits herself in Schedules C and D of her account. Burr, Coombs & Wilson, as the attorneys of Mrs. King, prepared her account and secured the decree of the Surrogate's Court allowing it. See notes A and C. Mr. Wilson in preparing this complaint for his new clients made use of and examined the papers which Burr, Coombs & Wilson, as attorneys of Mrs. King, had prepared for Mrs. King. It is of no consequence whether Mr. Wilson examined the original "King" papers in the surrogate's office or copies of them from the private files in his own office; in either event, on each of those papers appeared the name of his firm, "Burr, Coombs & Wilson," to remind him of his obligation to Mrs. King.

Courts of law compel one member of a business firm to respect the contracts entered into on behalf of that firm by another member. A member of a firm of lawyers must be held to the same legal standards. The name of Mr. Wilson's firm on these "King" papers as the attorneys of Mrs. King put Mr. Wilson under the same obligation of loyalty to Mrs. King as he would have been under had his name appeared on those papers as her sole attorney. His partnership obligations prohibited him from attacking the decree which his firm secured for her. When Mrs. King paid Burr, Coombs & Wilson for their services, she paid not only for the firm's guaranty but also for the guaranty of each of its members that as her lawyers they believed the decree which they had secured for her was legal and valid, and that they knew no defect therein.

In the controversy over the construction of Mr. King's will, Mr. Wilson, in representing the remaindermen mentioned in that will after he had represented Mrs. King, was accepting a retainer on both sides of the same controversy. In doing this Mr. Wilson violated the rules which govern professional honor and ethics. By rules of professional honor and ethics I mean those common rules or ordinary standards of decency and fair dealing which forbid any act by an attorney which may bring the legal profession into disrepute, regardless even of intent to do wrong. To the end that the confidence in the legal profession shall not be impaired, the rule is stringent the lawyer at no time and in no manner shall act as the attorney for another adversely to the interests of his present client or of his former client in the same matter. Equity will even enjoin the partner of such an attorney from thus acting. See Earl Cholmondeley v. Lord Clinton and Griffiths v. Griffiths, supra.

Mr. Wilson throughout the entire seven-year litigation against Davis seems studiously to have avoided mentioning any fact which would call the court's attention to the relation of attorney and client which had subsisted between Mrs. King and Burr, Coombs & Wilson, but he takes advantage of defendant Davis' inability, as executor of

Mrs. King's estate, to account for her acts with reference to the property she received from her husband's estate because of her failure to keep books, regardless of the fact that Mrs. King, relying on the decree which Burr, Coombs & Wilson had obtained for her, adjudging her to be the sole legatee of her husband's property, was under no obligation to keep books.

Upon the second trial of the Davis action, Mr. Wilson obtained an interlocutory judgment which directed Davis, as executor of Mrs. King, to file an account of her acts and to charge himself therein with $17,268.50, the amount she received from her husband's estate. Davis filed an account wherein he stated in substance that, so far as he had been able to ascertain with due diligence, Mrs. King kept no account of the funds and property which she received from her husband's estate, and therefore he did not charge himself in his account with the amount she had thus received as directed by the interlocutory decree. Thereupon Mr. Wilson obtained a final judgment against Davis for $17,268.50, the full amount of the husband's estate, without proofs of any kind and solely upon the ground that Davis had not obeyed the interlocutory judgment in not charging himself with that amount. An appeal was taken by Davis to the Appellate Division from this interlocutory judgment and also from the final judgment. On this appeal (133 App. Div. 191, 117 N. Y. Supp. 468) Mr. Justice Burr sat as a member of the court and took part in the decision of the appeal.

In the action before me, which is governed by equitable principles, the judgment against Davis should be disregarded, irrespective of the merits of the action in which it was obtained, because of the former relation to Mrs. King of Mr. Wilson and also of Mr. Justice Burr.

[4] Second. It was unlawful for Mr. Justice Burr to sit as a member of the court and to take part in the decision of the court on this appeal when he had previously acted as attorney for Mrs. King in the matter out of which the litigation before the court grew.

Let us consider the position taken by the courts of New York state on a judge's taking part, sitting in judgment, or even sitting on the bench in a cause involving a subject-matter in which he had formerly acted as attorney when that cause thereafter came before his court for determination.

Said Judge Hurlbut in Oakley v. Aspinwall, 3 N. Y. 547, at pages 549, 550:

"The first idea in the administration of justice is that a judge must necessarily be free from all bias and partiality. He cannot be both judge and party, arbiter and advocate in the same cause. Mankind are so agreed in this principle that any departure from it shocks their common sense and sentiment of justice."

The provisions of section 15 of the Judiciary Law (Consol. Laws 1909, c. 30) are to be construed with reference to this elementary principle of judicial administration enunciated by Judge Hurlbut. That section among other things provides:

"A judge shall not sit as such in, or take any part in the decision of, a cause or matter to which he is a party, or in which he has been attorney or counsel, or in which he is interested. * * *"

The statutory disqualification of a judge from taking any part in a cause or matter in which he has been attorney or counsel "contemplates," as said by Mr. Justice Jenks in People v. Haas, 105 App. Div. at page 121, 93 N. Y. Supp. at page 792:

"Any service in that cause or matter rendered by a lawyer in his legal capacity as an officer of the court."

Proceeding, Mr. Justice Jenks adds:

"However upright the judge, and however free from the slightest inclination but to do justice, there is a peril of his unconscious bias or prejudice, or lest any former opinion formed ex parte may still linger to affect unconsciously his present judgment, or lest he may be moved or swayed unconsciously by his knowledge of the facts which may not be revealed or stated at the trial or cannot under the rules of evidence. No effort of the will can shut out memory; there is no art of forgetting. We cannot be certain that the human mind will deliberate and determine unaffected by that which it knows but which it should forget in that process. * * * And there is a further consideration beyond the security of parties, namely, the fair repute of justice for absolute impartiality. In People ex rel. Roe v. Suffolk Common Pleas, 18 Wend. 550, 552, Bronson, J., * * * says: 'Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge.' "

In another of the cases cited the court remarked that, if a judge has acted as attorney, counsel, law advisor, or advocate in relation to the business in hand, that furnishes just cause of exception without reference to the time when such aid or counsel was given. Mr. Justice Jenks concludes:

"Our more recent policy is to hedge in our judges so that the most hypercritical will find no opening for their shafts. That we do 'suppose a possibility of bias or favor in a judge,' * * * or at least that we propose to put him beyond the danger of aberration or without the shadow of suspicion, is proved by our statutes of disqualification."

As affecting Mr. Justice Burr, we have these undisputable facts established by the record herein: Before Mr. Justice Burr became a justice of the Supreme Court in 1905, he was a member of the law firm of Burr, Coombs & Wilson. This firm in the years 1899, 1900, and 1901 acted as the attorneys of Mary E. King in matters affecting the administration of the estate of her husband, William Z. King, of which estate Mrs. King was the executrix. They rendered services to Mrs. King on the probate of her husband's will, in obtaining the order to advertise for claims, in making the inventory upon the application to fix the transfer tax, in the preparation of her account as executrix, and in obtaining the decree settling her account, and in addition rendered her general services incidental thereto. See note C.

To bring Mr. Justice Burr within the inhibition of the principles and statute above referred to, two facts must be clearly established: (A) That Mr. Burr was a member of the firm of Burr, Coombs & Wilson and acted personally for the firm, the attorneys of Mrs. King; and (B) that the matter in which he acted for her as attorney was the same matter in which he sat in judgment as one of the justices of the Appellate Division on this appeal. 133 App. Div. 191, 117 N. Y. Supp. 468.

That Mr. **Burr** acted finds support in the following facts: (A) The decree admitting William Z. King's will to probate recites a deposition of Joseph A. Burr. The affidavit of the bill of costs in the accounting proceeding of Mrs. King as executrix of her husband's estate is signed and sworn to by "Jos. A. Burr." See note D. A letter addressed to Mrs. Mary E. King, bearing date about a year subsequent to the date of the decree settling the accounts of Mrs. King and signed "Jos. A. Burr," refers to an inclosed will and instructs her as to its execution. See note E. (B) On the appeal (133 App. Div. 191, 117 N. Y. Supp. 468) Mr. Justice Burr sat in judgment on the same subject-matter in which he had acted as attorney. Of this there can be no doubt. The title of the case on the cover of the printed record on appeal shows it to be the same subject-matter. The names of both William Z. King and Mary E. King appear in that title, and they appear throughout the record. The title is as follows:

"Supreme Court, State of New York, Appellate Division, Second Department. George W. Seaward, as Administrator with the Will Annexed of the Goods, Chattels and Credits which were of William Z. King, Deceased, Plaintiff-Respondent, against Buell G. Davis, as Executor of the Last Will and Testament of Mary E. King, Deceased, Defendant-Appellant."

The complaint, among other things, sets forth a copy of the will of William Z. King and alleges that Mary E. King was the executrix of his will. The complaint demands judgment that the defendant executor of Mrs. King's estate account to the plaintiff, the administrator c. t. a. of the estate of William Z. King, for all property paid to and received by the said Mary E. King, deceased, from the estate of said William Z. King, deceased. The answer to this complaint sets forth a copy of the decree settling the account of Mary E. King as the executrix of her husband's estate, the decree reciting that it is made on the motion of Burr, Coombs & Wilson, and it allows her account, adjudges her to be the sole legatee under her husband's will, and authorizes her to pay over and dispose of the property of the estate to herself as such legatee. See note A. This decree construed the will of William Z. King and held that his wife was the sole legatee thereunder.

Mr. Wilson, on behalf of his new clients, the remaindermen, contended and contends now that such construction was erroneous. This was and is the fundamental issue between the parties and is the principle issue discussed on the appeal. Mr. Wilson argued that appeal before the Appellate Division. It is not credible that Mr. Justice Burr forgot that Mr. Wilson had been his partner, and this court cannot assume that with the appeal record before him, the names of the parties disclosed, and in the light of the nature of the matter under discussion, Mr. Justice Burr forgot that he had acted as attorney for Mrs. King in the matter. He may have forgotten the principles of law and the statute above referred to which disqualified him to sit, or he may have placed a construction on them different from mine. Be that as it may, with it this court, in the discharge of its duty as it conceives it, has nothing to do. The sufficient and satisfying explanation must be made elsewhere.

Although under the construction of Mr. King's will, for which Mr. Wilson contended in behalf of his new clients, Mrs. King was given

the power to use both principal and interest for her own support, nevertheless, as before stated, the final judgment rendered without any proof and which was sought to be reviewed on this appeal was for $17,268.50, the full amount she received from her husband's estate, and was rendered solely upon the ground that Davis had not obeyed the interlocutory judgment in that he had not charged himself with that amount. Mr. Justice Burr, sitting in the case as a justice, holds with his former partners in their new position and relationship. In his opinion Mr. Justice Burr makes no mention of his former relation to Mrs. King as her attorney in the same subject-matter which is before him as a justice, and notwithstanding the fact that the inability of the defendant Davis, as Mrs. King's executor, to account to the remaindermen for Mrs. King's actions with reference to her husband's estate was due to the fact that Mrs. King in her lifetime, acting under the decree procured by her counsel, Mr. Burr, had treated as her own the personal property left by her husband, Mr. Justice Burr says in his opinion (133 App. Div. at pages 197, 198, 117 N. Y. Supp. page 473):

"The defendant here (Davis) has shown a lack of candor and fairness in the entire proceeding and has apparently sought to obscure rather than to make clear the real situation. If, as the result of this, he has been held accountable for a larger sum than was justified by the real facts, he has only himself to blame."

[5] True, Mr. Justice Burr's opinion was not adopted as the opinion of the court on this appeal, but in the eyes of the law the Appellate Division's determination was nevertheless rendered void by reason of Mr. Justice Burr's participation therein. The object of the statute which inhibited him from writing this opinion "goes beyond the security of parties, namely, the fair repute of justice for absolute impartiality." Mr. Wilson does not scruple to use and extol the excellence of Mr. Justice Burr's opinion in subsequent proceedings in the case, and the construction of the will which Mr. Wilson advocated and which Mr. Justice Burr sought to place on Mr. King's will in his opinion is actually adopted by the Appellate Division on a subsequent and final appeal to it. Although the determination of the Appellate Division on this appeal was void because of Mr. Justice Burr's participation in it when disqualified by law, an appeal is taken from it by Mr. Wilson to the Court of Appeals as though it was valid.

[6] Third. The Court of Appeals was induced to entertain, hear, and decide this appeal by a species of fraud upon that court in that the facts which disqualified Mr. Justice Burr from sitting below were not called to the attention of the Court of Appeals either by Mr. Wilson in his brief or by Mr. Justice Burr in his opinion. The Court of Appeals was justified in relying and did rely on the strong presumption existing in every case coming before it that a justice of the Appellate Division would not sit in judgment in a cause in which he was disqualified from sitting, and that, if disqualifying facts existed, the justice affected thereby would voluntarily and of his own accord withdraw from the case.

Mr. Wilson, in the brief which he submitted to the Court of Appeals, relies chiefly on Mr. Justice Burr's opinion to support his contentions. Whenever it is necessary for him to refer to the decree which Burr, Coombs & Wilson procured for Mrs. King and which adjudged her to be the sole legatee under her husband's will, he avoids mentioning the name of Burr, Coombs & Wilson in connection therewith and states the facts so that it does not appear that Mrs. King had acted and relied upon that decree. This amounts to a willful suppression of the truth. He ventures to go one step further. He not only suppresses the truth but he also states as a fact a very material matter which is false and which he knew to be false, which statement seemingly misled the Court of Appeals and affected its decision. This will be the subject next considered.

Fourth. The falsehood in Mr. Wilson's brief, which was submitted to the Court of Appeals.' On the appeal to the Court of Appeals, the question at issue was the construction to be placed on Mr. King's will, and whether there was a duty on the part of the defendant Davis, as executor of Mrs. King's estate, to account to the remaindermen named in Mr. King's will for the property she had received from her husband's estate. Had that property become her own to be disposed of as she saw fit, or had it remained a trust estate in her hands for which her executor would have to account, provided any part of it had come to him? These were vital questions. If Mrs. King had the absolute power of disposition of the property during her lifetime and had exercised it, then there was no need of an accounting by her executor.

Mr. Wilson was in a very delicate and awkward position before the Court of Appeals. Success in that court demanded that he should attack the decree of the Surrogate's Court, which adjudged Mrs. King to be the sole legatee under her husband's will, and at the same time suppress the fact that Burr, Coombs & Wilson had obtained the decree for her and what she had done under that decree. Mr. Wilson had the means to obtain the knowledge that Mrs. King had disposed of the greater part of her husband's government bonds by transferring them to herself under this decree. The bonds were United States 4 per cent. registered bonds due in 1907. Mr. Wilson knew the character of the bonds, when they became due, and that they did not become due in Mrs. King's lifetime. They are described in the inventory of Mr. King's estate. See note F. He may be fairly charged with the common legal knowledge that, although Mrs. King, as executrix, might sell and assign these registered bonds to a third person, the treasury department would hardly permit Mrs. King, as executrix, to transfer them to herself without an order or decree of the court authorizing her so to do. He knew that the decree procured by Burr, Coombs & Wilson permitted Mrs. King, as executrix, "to pay out and dispose of" the bonds as part of the balance of her husband's estate remaining in her hands by having "the title of such bonds transferred to her," and he knew, as a lawyer, that the purpose of this provision was to enable her to do so. It is also common knowledge that whether or not registered bonds have been transferred can readily be ascertained by inquiry

of the register of the treasury. He knew the truth, yet could not succeed if he told the truth. He meets the situation in his brief (pages 2 and 3) by suppressing the truth and falsely stating the facts as follows:

"Upon the death of William Z. King, his widow, Mary E. King, took possession of all the personal property of the deceased, amounting to $17,458.75.

"The widow, Mary E. King, claimed this personal property absolutely and conducted a proceeding in the Surrogate's Court for an accounting *upon which nobody was cited*, and obtained a decree adjudging that she was sole legatee and entitled to all his personal property.

"She thereupon turned over to herself individually all the personal property of the estate amounting to $17,268.50.

"All these proceedings in the Surrogate's Court were without any notice to the remaindermen mentioned in the decedent's will.

"The personal property received by the widow from her husband's estate was simple assets easily identified and easily accounted for."

After stating what these assets were, Mr. Wilson continues:

*"After the death of her husband and after receiving this personal property, the widow, Mary E. King, lived five years in the little village of Greenport, Long Island, in the home of her adopted daughter, Lilly Corwin.*

*"During these five years the government bonds which she received from her husband's estate matured.*

"Less than two months prior to her death, the widow, Mary E. King, made her will by which she bequeathed in cash $14,000."

The court proceedings referred to in the beginning of the above quotation are there stated to have been taken by Mrs. King. As a matter of fact, they were all conducted by her attorneys, Burr, Coombs & Wilson, but Mr. Wilson avoids mentioning his firm's name in connection with them. He does, however, say at page 27 of his brief that "the present attorney for the defendant was also her attorney during her lifetime," referring to the defendant Tasker herein.

The paragraphs in the above quotation italicized by me contain the false statements of fact which I particularly emphasize as affecting the decision of the Court of Appeals. It was not the fact that the bonds matured in Mrs. King's lifetime. That Mr. Wilson knew it not to be the fact when he wrote this brief is established by his own sworn statement. See note G. That it was a material matter and that the Court of Appeals acted upon it is established by the fact that Chief Judge Cullen states in his opinion that "the bonds matured and were paid." 198 N. Y. at page 421, 91 N. E. 1109. To establish Mr. Wilson's intent to deceive, a motive for deceiving must be shown. It can be assumed that Mr. Wilson would not have stated in his brief that which he knew to be untrue if he had not believed that the falsehood was more advantageous to him than the truth. So far as the deceit is concerned, it makes no difference whether or not the Court of Appeals was deceived in the precise manner Mr. Wilson intended. There is much in the records, however, to indicate that the Court of Appeals was so deceived. These false statements are misleading in that they imply that Mrs. King did not dispose of the bonds in her lifetime but rather that they had matured automatically; that their face value had been paid to her by the government; that she had in no wise exercised her absolute power of disposition over the bonds or

over the cash she received for them upon their maturity; that this cash remained a trust fund in her hands; and that this cash, not made her own by the exercise by her of her absolute power of disposition, she had endeavored to bequeath by will. Mr. Wilson's false statement in his brief that the bonds had matured dealt with a highly material fact at a period in the case critical to him and to his new clients.

On two prior appeals the Appellate Division had held in effect that Mrs. King under her husband's will had an absolute power of disposition of her husband's property during her lifetime. The Court of Appeals held that she had such absolute power. If it had been known to any of these courts that Mrs. King had disposed of all the property in the execution of her absolute power, judgment would have at once been rendered against Mr. Wilson and his new clients. By means of his falsehood, Mr. Wilson obtained the judgment against Davis. Acting on its belief in the truth of the false statement of Mr. Wilson that the bonds had matured in the widow's lifetime, the Court of Appeals directed the accounting to proceed, and an opportunity was thereby afforded to mislead the lower court as to what the Court of Appeals had held to be the proper construction of Mr. King's will. Whether it was because the lower court was misled by Mr. Wilson or because of its own mistake, the lower court did disregard the construction placed upon Mr. King's will by the Court of Appeals and rendered judgment against Mr. Davis. To collect this judgment so obtained, Mr. Wilson caused the arrest and imprisonment of Davis. He is an old man, presumably of good reputation, whose honesty and good faith is evidenced by the fact that he kept intact the money and property which was the subject of the litigation, save only a comparatively small and most reasonable amount which he expended in his defense. The harshness of Mr. Wilson in taking the extreme measures of arresting and imprisoning this old man to collect costs and interest at a higher rate than Davis received, and his cupidity in this action in attempting to take away from his adversary, a reputable attorney, all the moneys paid him for services, including disbursements in a seven-year litigation, in the light of the history of the case, is not to be commended. After Davis' imprisonment, the third appeal in the case of Seaward v. Davis is argued and determined. 148 App. Div. 805, 133 N. Y. Supp. 384. This appeal is the final appeal in the case of Seaward v. Davis, and it is the final matter which now requires consideration.

[7] Fifth. The determination of the Appellate Division on the final appeal to it in the case of Seaward v. Davis is rendered nugatory by the fact that Mr. Justice Burr again sat as a member of the court, although he did not vote upon such determination. The Appellate Division on this appeal is practically the court of last resort for Davis. He has been completely stripped of money and property and is without means to appeal to the Court of Appeals should justice not be done him. Counsel could not have been assigned him even as a poor person to enable him to appeal to the Court of Appeals from the determination of the Appellate Division. Code Civ. Proc. § 466. The law for the preservation of the impartiality of courts and to protect

their reputation for impartiality was especially applicable to the Appellate Division on this last appeal of Davis.

In Oakley v. Aspinwall, 3 N. Y. 547, at page 551, above referred to, Hurlbut, J., says:

"The law applies as well to the members of this court [the Court of Appeals] as to any other; or if there be any difference it is rather in favor of its more stringent application to the judges of a court of last resort as well, because of its greater dignity and importance as a tribunal of justice, as that there is no mode of redress appointed for the injuries which its biased decisions may occasion."

On this last appeal to the Appellate Division, Mr. Justice Burr again sat as a member of the court, but the report of the case states that he did not vote. It is not stated that he took no part in the court's deliberation or its decision therein. Even if it be the fact that Mr. Justice Burr actually took no part in the decision, it was unlawful for him to sit in the case. Section 15 of the Judiciary Law is in the alternative. It provides that "a judge shall not sit as such in, *or* take any part in the decision of, a cause or matter * * * in which he has been attorney or counsel." The Appellate Division in deciding this last appeal seems to have fallen into error. The Court of Appeals in its opinion explicitly and in so many words says that Mr. King's will gave his widow "a life estate with the absolute power of disposition during her lifetime." It is my duty to take the decision of the Court of Appeals at its face value.

[8] An absolute power of disposition is defined by statute. Real Property Law (Consol. Laws 1909, c. 50) § 153. See, also, section 149. See note H. This statutory definition applies to personal property as well as to real property. Cutting v. Cutting, 86 N. Y. 522, 546. Notwithstanding the fact that this language of the Court of Appeals has a statutory definition and is not open to construction, nevertheless the Appellate Division in substance holds that the will of Mr. King gave his widow, not "the absolute power of disposition," but the power of disposition which was limited to her own use and support. This is the construction which is placed on the will by the opinion of Mr. Justice Burr on the previous appeal to the Appellate Division. The presence of Mr. Justice Burr as a member of the Appellate Division on this last appeal lays that court open to the criticism that because of his presence it did not follow the opinion of the Court of Appeals as to the meaning of Mr. King's will but did follow the opinion of Mr. Justice Burr, who, in the eyes of the law, is a biased member of the court. The court's reputation for impartiality is thereby impugned. Mr. Justice Burr may not have been actually biased, but his bias is presumed as a matter of law by reason of his statutory disqualification.

[9] Plaintiff's right to recover in the action now before me is to be determined on principles which govern courts of equity.

[10] If a biased judge sits as a member of an appellate court, such court, on that fact being brought to its attention, must set aside its determination and allow a reargument. Oakley v. Aspinwall, supra. The presence of such a biased member affects the substantial right of the litigant. People v. Haas, supra.

[11] A court of equity presumes as done what ought to be done. This court, in view of the equitable nature of the action before it, may and should disregard a determination of the Appellate Division which has been illegally rendered and which that court itself must set aside on proper application.

[12] Nor should a decision obtained through a violation of the confidential relation of attorney and client, nor one obtained on a misrepresentation to the court of a material fact, be allowed to avail the party guilty of the offense. The wrong which Davis suffered cannot be righted in this action, but further injustice towards him through the present proceeding against his attorney can and should be prevented.

All the facts being before this court for the first time only after the conclusion of the trial herein, the court now for the first time is in a position to render judgment on the merits, which it hereby does by denying the motion for a new trial and by dismissing the complaint.

Order dismissing complaint on the merits signed.

### NOTE A.

Decree settling the accounts of Mrs. King, as executrix of her husband's estate, rendered by the Surrogate's Court of Kings county on May 18, 1900. This decree recites that it is made on the motion of "Burr, Coombs & Wilson," and, after adjudging that Mrs. King's account be settled and allowed and setting forth the summary statement of the account, the decree continues as follows:

"It is further ordered, adjudged, and decreed that the said executrix do, and she is hereby ordered and directed to, pay out and dispose of the balance so remaining in her hands as follows: That she be permitted and allowed to sell the government bonds referred to in Schedule A of her account remaining unsold and of the face value of $12,000 and inventoried at $13,560 and turn over the proceeds of such sale to herself as sole legatee under the said will or, if she so elect, to have the title of such bonds transferred to her. That she do retain the sum of $78, which sum is hereby allowed to her as and for reasonable costs, counsel fees, and other expenses in this proceeding. That she turn over the balance, the sum of $1,239.75, remaining in her hands to herself as sole legatee under the will of William Z. King, deceased.

"It is further ordered that the said executrix, upon making the payments and turning over the property hereinbefore directed, be discharged from all liability on account of her acts as such executrix as to the items embraced in this accounting."

### NOTE B.

The account of Mary E. King, as executrix of husband, which was prepared by Burr, Coombs & Wilson, is dated May 11, 1900. Schedule C thereof contains the following:

Paid Burr, Coombs & Wilson for services rendered to estate as follows:

| | |
|---|---:|
| For publication of citation and services on probate of will........ | $ 35 00 |
| Obtaining order to advertise for claims........................ | 10 00 |
| Services rendered in making inventory......................... | 10 00 |
| Services rendered on application to fix transfer tax............ | 25 00 |
| Services rendered in obtaining exemption of estate from federal legacy tax.................................................. | 25 00 |
| General services rendered estate............................. | 200 00 |
| Transfer tax paid to treasurer of the county of Kings.......... | 163 27 |

## NOTE C.

Two vouchers were filed with Mrs. King's account; the following are copies of the same:

"Telephone Number '92 Williamsburgh.'

"84 Broadway, Brooklyn, January 10, 1900.

"$391.00.

"Received from Mary E. King, as executrix of the last will and testament of William Z. King, deceased, three hundred and ninety-one dollars for services and disbursements to date in the matter of the estate of William Z. King, deceased.  Burr, Coombs & Wilson."

"Telephone Number '92 Williamsburgh.'

"84 Broadway, Brooklyn, May 11, 1900.

"$2280.00.

"Received from Mary E. King, as executrix of the last will and testament of William Z. King, deceased, two thousand two hundred and eighty dollars, being the proceeds of two U. S. government bonds of the face value of $1,000.00 each, together with the premium thereon.  Mary E. King."

## NOTE D.

The following is a copy of the affidavit to the bill of costs, which was allowed by the decree settling Mrs. King's account as executrix:

"State of New York, County of Kings—ss.:

"Joseph A. Burr being duly sworn doth depose and say that he is one of the attorneys and counsel for Mary E. King, the accounting party in the above-entitled proceedings; that the foregoing disbursements have been actually made or will be necessarily incurred therein, and that such disbursements are correctly stated, and are for reasonable and necessary expenses in this proceeding. Deponent further says that the days stated in the foregoing bill of costs to have been occupied as therein specified, were actually, substantially and necessarily so occupied and employed in this proceeding by deponents' employés and assistants. That no compensation has been paid or given out of the funds of the estate of the said deceased, for or on account of any services in the foregoing bill of costs specified.  · Jos. A. Burr.

"Subscribed and sworn this 11th day of May, 1900.

"Herman Joerg,

"Commissioner of Deeds, City of New York,

"Residing in the Borough of Brooklyn, Kings County.

"Notary Public."

## NOTE E.

The following are copies of a letter and an inclosure and a bill said to have been found among Mrs. King's papers after her death. This letter and bill are referred to in record on appeal, Seaward v. Davis, 148 App. Div. 805, at page 121, folio 363. The will referred to in the letter has not been produced.

"Telephone Number '92 Williamsburgh.'

"Burr, Coombs & Wilson, Counsellors at Law, No. 84 Broadway.
"Joseph A. Burr,
"Samuel H. Coombs,
"Robert H. Wilson,
"Theo. F. Jackson, Counsel.

"Brooklyn, N. Y., May 8th, 1901.

"Mrs. Mary E. King, 147 Penn St., Brooklyn, N. Y.—Dear Mrs. King: I inclose herewith your will ready for execution. I also inclose a slip of paper showing how it should be signed both by yourself and the witnesses. The witnesses should add to their names, their places of residence. When you are ready to execute the will, call two witnesses, sign the will in their presence, then state, 'This is my last will and testament and I wish you to act as witnesses.' Then read in their presence the clause beginning, 'Signed, sealed, published and declared,' etc., and have the witnesses each sign in your presence and in the presence of each other. You can then take the will and

seal it up and put it in some safe place. I trust it may be very many years before there will be any occasion to use it. As requested by you, I inclose my bill.

"Yours, etc.,                                               Jos. A. Burr."

"P. S. When you have executed this will you had better destroy the one made in June of last year."

Paper said to have been inclosed in foregoing letter:

"In witness whereof, I have hereunto set my hand and seal this ———— day of May, nineteen hundred and one.                     Mary E. King.

"Signed, sealed, published and declared by the above-named testatrix as and for her last will and testament in our presence and we at her request and in her presence and in the presence of each other have hereunto subscribed our names as witnesses.                    John Jones,
                                    "100 Bedford Avenue, Brooklyn, N. Y.
                                    "Richard Smith,
                                    "Greenport, Long Island."

Bill said to have been inclosed in foregoing letter:

"Telephone Number 1547 'Williamsburgh.'
                                    "Brooklyn, N. Y., May 8, 1901.

"Ledger
"Folio
"Mrs. Mary E. King to Burr, Coombs & Wilson, Dr. Attorneys and Counsellors at Law, 84 Broadway, Brooklyn, N. Y.
"To services drawing will..................................... $10 00
                                    "Paid
                                    "F. G. Neauche, Cashier."

## NOTE F.

Inventory of Mr. King's estate was filed June 2, 1899. Omitting household and personal articles of an aggregate value of $318.75, this inventory sets forth the following:

| | | |
|---|---:|---:|
| Cash in hand.................................... | $  300 00 | $  300 00 |
| Cash in Seamen's Bank for Savings, N. Y., Book No. 212,537, balance........................... | 1,000 00 | 1,000 00 |
| And interest from Jan. 1, 1897. | | |
| 10 bonds $1,000 ea., due 1907.................... | 10,000 00 | |
| 6 bonds $500 ea., due 1907...................... | 3,000 00 | |
| 10 bonds $100 ea., due 1907..................... | 1,000 00 | |
| U. S. 4 per cent. registered bonds............... | $14,000 00 | |
| Appraised value 113 per cent.................... | | $15,820 00 |

## NOTE G.

Sworn statement of Mr. Wilson discrediting his brief. Mr. Wilson's brief was submitted to the Court of Appeals on April 26, 1910, the date of the argument of the appeal in that court. Seaward v. Davis, 198 N. Y. 415. In a certain petition to the Appellate Division verified by Mr. Wilson on June 9, 1913, he states that he ascertained in 1908 that Mrs. King had transferred the government bonds to herself. This statement is contained in the following paragraph thereof:

"XXX. That it was not until after the decision by the Court of Appeals, in May, 1910, holding that the burden of proof was on the plaintiff to prove what property Mary E. King had not disposed of, that your petitioner ascertained the dealings of said Mary E. King with the said property so received by her from her husband's estate, except that it had been ascertained in 1908 by inquiry at the Treasury Department in Washington that she had transferred the government bonds to herself and had subsequently resold them."

## NOTE H.

Section 153 of the Real Property Law reads as follows: "Sec. 153. When power of disposition absolute.—Every power of disposition by means of

which the grantee is enabled, in his lifetime, to dispose of the entire fee for his own benefit, is deemed absolute."

Section 149 of the Real Property Law authorizes a remainder dependent on the bare chance of the nonexercise of the absolute power of disposition by the donee. This section reads as follows: "Sec. 149. When estate for life or years is changed into a fee.—Where an absolute power of disposition, not accompanied by a trust, is given to the owner of a particular estate for life or for years, such estate is changed into a fee absolute in respect to the rights of creditors, purchasers and incumbrancers, but subject to any future estates limited thereon, in case the power of absolute disposition is not executed, and the property is not sold for the satisfaction of debts."

The courts of this state have held that the term "absolute power of disposition" applies and is confined to cases where the donee and no other person is interested in the proceeds which arise from the execution of the power. Stafford v. Washburn, 145 App. Div. at page 797, 130 N. Y. Supp. 571 (opinion of Laughlin, J.). Judge Laughlin's opinion was adopted as the opinion of the Court of Appeals on the subsequent appeal of the case to that court. 208 N. Y. 536, 101 N. E. 1122.

In Cutting v. Cutting, 86 N. Y. 522, at page 539, it is said that "by an absolute power of disposition they [the revisers of the statutes] meant a power of disposition in the lifetime of the donee, or, in other words, a power by which he 'may sell when he chooses, and dispose of the proceeds at his pleasure.' "

Compare the statute and cases above referred to with what Chief Judge Cullen says of the power given Mrs. King by her husband's will: In Seaward v. Davis, 198 N. Y. 415, at page 420, 91 N. E. 1107, at page 1108, Chief Judge Cullen first states that Mr. King's will gave the widow "the absolute power of disposition during her lifetime, with remainder over of such part as she might not dispose of to the persons named in the will," and shortly after using this language says that "the widow had the right to dispose of the property in her lifetime and as to such property as she did dispose of neither she nor her executor was bound to account to the remaindermen because they had no interest in it."